THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**KARLA VANESSA ARCIA, an individual,**
**MELANDE ANTOINE, an individual,**
**VEYEYO, a civic organization based in**
**Miami-Dade County, FLORIDA**
**IMMIGRANT COALITION, INC.,**
**a Florida non-profit corporation,**
**NATIONAL CONGRESS FOR PUERTO**
**RICAN RIGHTS, a Pennsylvania non-profit**
**corporation, FLORIDA NEW MAJORITY,**
**INC., a Florida non-profit corporation, and**
**1199SEIU UNITED HEALTHCARE**
**WORKERS EAST, a Labor**
**Union,**

        **Plaintiffs,**

        **v.**

                                  **CASE NO.**

**KEN DETZNER, in his official capacity**
**as Florida Secretary of State,**

        **Defendant.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs KARLA VANESSA ARCIA, an individual, MELANDE ANTOINE, an individual, VEYEYO, a civic organization based in Miami-Dade County, FLORIDA IMMIGRANT COALITION, INC., a Florida non-profit corporation, NATIONAL CONGRESS FOR PUERTO RICAN RIGHTS, a Pennsylvania non-profit corporation, FLORIDA NEW MAJORITY, INC., a Florida not for profit corporation, and 1199SEIU UNITED HEALTHCARE WORKERS EAST, a labor union (collectively "Plaintiffs"), bring this action

seeking declaratory judgment and injunctive relief against Defendant KEN DETZNER, in his official capacity as Florida Secretary of State ("Defendant"):

## THE ACTION

1.     In this action for declaratory judgment and injunctive relief, Plaintiffs are seeking a judicial declaration that the program known as "Processing Ineligible Registered Voters-Non-Immigrants" (the "Alleged Non-Citizen Voter Purge Program" or "Program") violates Section 2 of the Voting Rights Act ("VRA"), 42 U.S.C. § 1973, because it has resulted in United States Black and Hispanic citizens having "less opportunity than other members of the electorate to participate in the political process and to elect the representatives of their choice."

2.     Moreover, Plaintiffs are seeking a judicial declaration that the Alleged Non-Citizen Voter Purge Program is in violation of Section 8(b)(1) of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-6(b)(1) and Fla. Stat. § 98.075(1), both of which provide that any State program or activity designed to ensure the maintenance of accurate and current voter registration rolls "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965[.]"

3.     Lastly, Plaintiffs are seeking a judicial declaration that the Alleged Non-Citizen Voter Purge Program is in violation of Section 8(c)(2)(A) of the NVRA, 42 U.S.C. § 1973gg-6(c)(2)(A), which prohibits the systematic purging of eligible voters from the official voter list for the State of Florida, within 90 days before the date of a primary or general election for Federal office.

## PARTIES

4.      Plaintiff KARLA VANESSA ARCIA ("Ms. Arcia") is an individual and a resident of Miami-Dade County, Florida.  Ms. Arcia is a citizen of the United States of America and a qualified and legally registered Florida voter.  Ms. Arcia is Nicaraguan-American.  As set forth more fully below, Ms. Arcia's rights have been, and will continue to be, affected by the Alleged Non-Citizen Voter Purge Program.

5.      Plaintiff MELANDE ANTOINE ("Mrs. Antoine") is an individual and a resident of Miami-Dade County, Florida.  Mrs. Antoine is a citizen of the United States of America and a qualified and legally registered Florida voter.  Mrs. Antoine is Haitian-American.  As set forth more fully below, Mrs. Antoine's rights have been, and will continue to be, affected by the Alleged Non-Citizen Voter Purge Program.

6.      Plaintiff VEYEYO ("VEYEYO"), is a Miami-Dade County-based civic organization that is affiliated with the Haitian-American Grassroots Coalition.  It has an office in Miami-Dade County, Florida and individual members throughout South Florida.  VEYEYO's primary purposes are to empower Haitian-American citizens who are engaged in civic and democratic endeavors, and to assist members of the Haitian-American community in identifying and articulating issues of concern, including voting rights issues.  VEYEYO is an organization dedicated to increasing the prominence and participation of Haitian-Americans in every aspect of the political process.  To achieve this goal, VEYEYO facilitates naturalization classes, registers voters and engages in voter education and voter mobilization efforts.  Defendant's unlawful practices have frustrated VEYEYO's mission as VEYEYO has been required to expend resources to locate members who have been unlawfully purged and/or to educate its members

about Defendant's unlawful practices, to combat them, at the expense of its regularly-conducted programs/activities.  In fact, VEYEYO has individual members who have been affected by the Alleged Non-Citizen Purge Program.

7.     Plaintiff FLORIDA IMMIGRANT COALITION, INC. ("FLIC"), is a Florida non-profit corporation with its principal office in Miami-Dade County, Florida and member organizations located throughout the State of Florida.  Central to FLIC's stated mission is the integration of immigrants into the civic and cultural life of America's communities.   In conjunction with the National Partnership for New Americans, in early 2012, FLIC launched an initiative "Florida New Americans," aiming at providing opportunities of full integration for Florida's largest immigrant communities, through a citizenship program which includes citizenship clinics and naturalization classes, all with the goal of advancing immigrant rights and creating active citizenship among new Americans to achieve a vibrant, just, and welcoming democracy for all.  Defendant's unlawful practices have frustrated FLIC's mission and have forced it to divert its scarce resources to combat Defendant's unlawful practices at the expense of its regularly-conducted programs/activities.

8.     Plaintiff the NATIONAL CONGRESS FOR PUERTO RICAN RIGHTS ("NCPRR") is a Pennsylvania non-profit corporation and membership organization founded in 1981 and dedicated to securing full equality for Puerto Ricans living in the United States through advocacy, education and participation in the political process.  NCPRR has chapters across the United States, including Central and Southern Florida.  These chapters are actively involved in safeguarding Puerto Rican and Hispanic voting rights and ensuring their political access in Florida.  NCPRR's members are mainly comprised of Puerto Ricans and other Hispanics who

are concerned about civic participation, including voting rights.  NCPRR's Florida members stand to be disenfranchised by Defendant's unlawful practices, which include inaccurate name matching which has already resulted in native born United States citizens being targeted. NCPRR's mission is frustrated by Defendant's unlawful voter purge practices, and NCPRR has had to divert resources to combat Defendant's unlawful practices.

9.    Plaintiff FLORIDA NEW MAJORITY, INC. ("FNM") is a Florida non-profit corporation and membership organization with its principal office in Miami-Dade County, Florida.   Founded in 2009, FNM is dedicated to organizing, educating, and mobilizing disempowered communities in Florida to win equity and fairness throughout the State.  FNM's central focus is to expand democracy and develop the leadership of underrepresented communities.   To achieve its goal, FNM works with citizens who are engaged in civic and democratic endeavors and assists members of its target communities in identifying and articulating issues of concern, including voting rights issues.  Defendant's unlawful practices have frustrated FNM's mission as FNM has been required to expend resources to locate members who have been unlawfully purged and/or to educate its members about Defendant's unlawful practices, to combat them, at the expense of its regularly-conducted programs/activities. In fact, FNM has individual members who have been affected by the Alleged Non-Citizen Purge Program.

10.    Plaintiff 1199SEIU UNITED HEALTHCARE WORKERS EAST ("1199SEIU") is a labor union that represents 25,000 healthcare workers, as well as an additional 7,400 retired members, in the State of Florida.  1199SEIU has members in 43 out of the 67 counties in Florida, including, but not limited to, the counties in this District, as well as Collier, Lee, Hillsborough,

and Hendry Counties.  Many of 1199SEIU's members are registered to vote or have sought to register to vote.  1199SEIU has devoted significant time, energy and resources to making sure its members and their families, co-workers and community members are registered to vote, and is committed to ensuring that every Floridian who is a United States citizen has the right to vote and the opportunity to exercise that right.  Voter registration, education and engagement are central to 1199SEIU's mission, as reflected in its financial and personnel commitments and in the Service Employee International Union's mission statement:  "We must build political power to ensure that workers' voices are heard at every level of government to create economic opportunity and foster social justice."  Some of 1199SEIU's members, including Ms. Arcia and Mrs. Antoine, are United States citizens who were affected by the Alleged Non-Citizen Purge Program.  Defendant's unlawful practices frustrate 1199SEIU's mission and require it to expend its limited resources investigating and taking measures to counteract the Alleged Non-Citizen Purge Program, thus diverting resources from planned voter registration and education activities.

11.     Defendant KEN DETZNER is the Secretary of State of the State of Florida, and is being sued in his official capacity.  Pursuant to Fla. Stat. § 92.012, the Secretary of State is the chief elections officer of the State and is therefore responsible for administration of state laws affecting voting, and for ensuring that elections in Florida are conducted according to law. Additionally, he is responsible for coordinating Florida's responsibilities under the NVRA.

## JURISDICTION

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as a case arising under the laws of the United States; under 28 U.S.C. § 1343(a)(3) and (4), as a case seeking equitable and other relief pursuant to an act of Congress

providing for the protection of the right to vote; and under 42 U.S.C. § 1983, as a case seeking to enforce rights and privileges secured by the laws of the United States.

13.     In addition, this Court has jurisdiction over the pendent state law claims pursuant to 28 U.S.C. 1367(a).

## FACTS

### A.     *The State of Florida's Alleged Non-Citizen Voter Purge Program*

14.     In a press release dated May 9, 2012 (the "Press Release"), Defendant announced that the Florida Department of State ("DOS") was partnering with the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") *"to identify non-citizens who are currently on Florida's voter rolls."* In the Press Release, Defendant asserted that the new initiative "is already proving to be successful. [DOS] recently sent the information *of more than 2,600 potential non-citizens* to Florida's 67 Supervisors of Elections for review and, if warranted, removal from Florida's voter rolls." Defendant pledged that it would continue identifying "more potential non-citizens in the next few months."

15.     According to the Press Release, the Alleged Non-Citizen Voter Purge Program arose after the DOS and DHSMV began working together to develop a way to identify non-citizens in early 2011 following "a credentialing project led by DHSMV which informed DOS of the potential to identify non-citizens in DHSMV's database, which requires anyone getting a new driver's license or renewing a driver's license or state ID card to submit documentary proof of his or her legal status."

16.     The Press Release further alleged that:

> When DOS receives information from DHSMV indicating that a registered voter may not be a United States citizen, DOS conducts

> an initial investigation to determine whether the information identifying a voter as potentially ineligible is credible and reliable. ***This preliminary investigation includes a cross-reference of all files against the Comprehensive Case Information System, DHSMV, Department of Corrections, Florida Parole Commission and Immigration and Customs Enforcement (ICE) databases*** in order to assist supervisors of elections in the removal process by providing the most accurate documentation available. Additionally, DOS is actively seeking access to federal Department of Homeland Security databases such as SAVE (Systematic Alien Verification for Entitlements) for further verification of immigration status.

(Emphasis added).

17.     On or about April 2, 2012, Defendant had, in fact, sent two lists containing approximately 2,700 names and identifying information of persons whom Defendant claimed were potential non-citizens, to each of the Supervisors of Elections in Florida's 67 counties (collectively the "Purge List"), including the Supervisors of Elections for Palm Beach, Broward, Miami-Dade and Monroe Counties, all of whom had persons identified on the Purge List.

18.     The Purge List included columns with the person's name, date of birth, voter identification number and a column titled "LAST DHSMV TRANSACTION," purporting to set forth each person's last DHSMV visit.

19.     Thereafter, in mid-April of 2012, Defendant published a webinar (the "Webinar") directing the Supervisors of Elections to review the file information provided on the Purge List and "conduct any additional research" (the "Additional Research"), described as follows:

> Refer to ***whatever other sources you have*** to confirm identity and potential change in legal status. You should all have access to DHSMV's DAVE [the Driver and Vehicle Express System]. ***If you find information credible and reliable, proceed.***

(Emphasis added).

20.     The Webinar states that persons had been placed on the Purge List as a result of positive identification that had been made by matching three out of five fields in the DHSMV database, including first name, last name, and birthday, for example "John" and "Smith" and a specific date of birth.  Several media reports have indicated that these poor matching procedures resulted in citizens born in the United States ending up on the Purge List, including a World War II veteran, who was born in Brooklyn, New York and a woman of Puerto Rican descent who was born in New York City.

21.     The Webinar indicates that the federal REAL ID law requiring proof of immigration status at the time of securing a driver's license or state identification has not yet been fully implemented in Florida, and illustrates that changes in legal immigration status, including naturalization, may not be included in the DHSMV database.

22.     After completing the Additional Research, the Supervisors of Elections were instructed by Defendant to carry out the procedures of Fla. Stat. § 98.075(7), for the removal of voters.  This directive was consistent with information contained in the Press Release, wherein Defendant stated as follows:

> When a supervisor of elections receives information from DOS that a registered voter is a potential non-citizen, *the supervisor must begin the statutory notice and removal process.*

(Emphasis added).

23.     The Webinar contained a sample notice letter and sample voter eligibility form which Defendant "suggested" be sent to the potentially ineligible persons on the Purge List.  The sample notice letter and sample voter eligibility form were only provided in English.

24.     As set forth more fully below, the processes and procedures used by the Supervisors of Elections to verify the eligibility of persons on the Purge List and to deal with the persons the Supervisors of Elections determined to be possibly ineligible, have varied widely – including one county that has refused to implement the Alleged Non-Citizen Voter Purge Program, because of the inaccuracy of the Purge List, and at least two counties that not only implemented the Program, but have removed, and have expressed the intent to continue removing, persons who did not respond to the notice and/or did not return the voter eligibility form.

**B.      *The Alleged Non-Citizen Voter Purge Program Violates Section 2 of the VRA***

25.     Section 2 of the VRA prohibits Florida from applying or imposing any "voting qualification or prerequisite to voting or standard, practice, or procedure" which results in denial or abridgement of the right to vote on account of race or color, or membership in a language minority group.  42 U.S.C. § 1973(a).

26.     Florida's voter registration form includes race identification, and the state's race identification data of the persons on the Purge List clearly demonstrates the disparate impact of the Program:  the Purge List itself shows 61% of the persons on Purge List are Hispanic, while 14% of registered Florida voters are Hispanic; 16% of the persons on the Purge List are Black, while 14% of registered Florida voters are Black; 16% of the persons on the Purge List are White, while 70% of registered Florida voters are White; and 5% of the persons on the Purge List are Asian, while 2% of registered Florida voters are Asian.  Adding up the disparate impact, 82% of those on the Purge List are people of color.   These numbers are glaringly disproportionate.

27.     Because Supervisors of Elections were instructed, in the Webinar, to review the immigration status of persons on the Purge List, as set forth in the DHSMV records, the Alleged Non-Citizen Voter Purge Program specifically targets *naturalized citizens* (as compared to persons born in the United States), the majority of whom are people of color whose rights are protected under Section 2 of the VRA.

28.     Many Black and Hispanic persons in Florida have suffered and continue to suffer discrimination and bear the effects of that discrimination today, including a history of discrimination and neglect in voting-related activities.

29.     In conducting the Alleged Non-Citizen Voter Purge Program, Defendant has failed to ensure that all Hispanics and Black voters, particularly Haitian-Americans, have an equal opportunity to participate in the political process and to elect the representatives of their choice.

30.     Plaintiffs are concerned about the curtailment of their communities' voting rights as a result of the Alleged Non-Citizen Voter Purge Program.

**C.    *The NVRA And Florida Law Both Require Uniformity and Non-Discrimination In Connection With List Maintenance Activities***

31.     Florida's procedures for registration list maintenance programs and activities are set forth in Chapter 98 of the Florida Statutes.  Section 98.075(1), Florida Statutes imposes on DOS and Defendant the duty to "protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records" and also provides that list maintenance activities undertaken by the DOS and Defendant must be "uniform,

nondiscriminatory, and in compliance with the Voting Rights Act of 1965, the National Voter Registration Act of 1993, and the Help America Vote Act of 2002." *See* Fla. Stat. § 98.075(1).[1]

32.     Section 8(b)(1) of the NVRA, for its part, requires that any state program or activity designed to ensure the maintenance of an accurate and current voter registration roll must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." *See* 42 U.S.C. §1973gg-6(b)(1).

33.     The House Report on the NVRA provides that the term "nondiscriminatory" is intended to mean that the procedure complies with the requirements of the VRA.  House Report No. 103-9, H.R. REP. 103-9, 15–16, 1993 U.S.C.C.A.N. 105, 119–20.

34.     The term "uniform" is intended to mean *"that any purge program or activity must be applied to an entire jurisdiction."* House Report No. 103-9, H.R. REP. 103-9, 15–16, 1993 U.S.C.C.A.N. 105, 119–20 (emphasis added).

35.     Moreover, Section 98.075(1) states that the DOS "may adopt by rule *uniform standards and procedures* to interpret and administer this section."  See Fla. Stat. § 98.075(1). (emphasis added).

36.     The Alleged Non-Citizen Voter Purge Program is inaccurate and unreliable, and therefore violates Section 8(b)(1) of the NVRA as well as Section 98.075(1), Florida Statutes.

---

[1]     Section 98.065(1), Florida statutes, imposes the same requirement on the Supervisors of Elections.  Moreover, Section 98.075(7) sets up procedures for removal to which the Supervisors of Elections must adhere "prior to the removal of a registered voter's name from the statewide voter registration system."  *See* Fla. Stat. § 98.075(7).

**D.     The Alleged Non-Citizen Voter Purge Program Violates the Non-Discrimination Provisions of the NVRA and Florida Law**

37.     The Alleged Non-Citizen Purge Program, which Florida failed to pre-clear as required by Section 5 of the VRA, 42 U.S.C. § 1973c, is discriminatory in violation of Section 2 of the VRA.

38.     Also, the Alleged Non-Citizen Voter Purge Program is highly inaccurate, further discriminating against the minorities that are already disproportionately over-represented.   In fact, while Defendant asserts that the Alleged Non-Citizen Voter Purge Program does not seek to purge eligible citizens, the statistics tell a vastly different story.  Of the 2,700 persons targeted by Defendant, the overwhelming majority of those who responded are United States citizens.

39.     Miami-Dade County's experience is illustrative.  Of the 1,637 persons identified by Defendant as non-citizens residing in Miami-Dade County, 1,572 were notified by the Miami-Dade County Supervisor of Elections that if they did not prove that they were United States citizens within 30 days of the date of the notice, they would be removed from the statewide voter registration system.[2]  Of the 1,572 persons who were sent the notice and voter eligibility form in Miami-Dade, a total of 562 responded.  ***Of the 562 who responded, 514 voters have provided proof of citizenship and 35 voters responded denying ineligibility but did not provide proof.***  Only 14 voters responded admitting ineligibility.  Thus, the overwhelming majority of those who responded, ***549 out of the 562, or 98%,*** are United States citizens and lawful, eligible voters.

40.     As demonstrated by the experiences of the individual Plaintiffs, there is a great likelihood that many of those who have not responded are United States citizens and lawful,

---

[2]     The Supervisor decided not to mail a notice to 65 persons "since they were duplicate names, citizens, deceased, or registered in another county," according to the Miami-Dade Supervisor of Elections' Office.

eligible voters.  For example, Plaintiff Ms. Arcia is a United States citizen whose name appears on the Purge List and who, based on the procedures created by Defendant, is required to be removed from the statewide voter registration system.  This is because she did not timely respond to the notice or return the voter eligibility form because she never received them.  Thus, if Defendant's instructions to the Supervisors of Elections as set forth in the Webinar, are carried out, Ms. Arcia will have to be removed from the statewide voter registration system.

41.     Mrs. Antoine, on the other hand, did respond but should never have been on the Purge List in the first place because she is a United States citizen who is eligible and duly registered to vote.

### E.     The Alleged Non-Citizen Voter Purge Program Violates the NVRA's and Florida Law's Uniformity Provisions

42.     The Alleged Non-Citizen Purge Program is not uniform in either design or implementation.  First, as set forth above, of the approximately 2,700 persons on the Purge List, 1,637 were identified by Defendant as being from Miami-Dade County.  This means that *61% of the persons on the Purge List are from one county -- Miami-Dade.*

43.     Moreover, the implementation of the Alleged Non-Citizen Voter Purge Program has varied widely by county. For example, the Palm Beach County Supervisor of Elections completely refused to implement the Program.  The Supervisor of Elections of Miami-Dade County, for her part, informed the Defendant that she "has chosen to exercise her discretion under state law and will not remove any voters (other than those whose ineligibility has been demonstrated by the evidence) until the State has the opportunity to review the remaining voters against current, credible and reliable data sources."  Other counties, including Broward and Monroe decided to conduct Additional Research and to send out notices and voter eligibility

forms but have indicated that they will likely not remove persons who did not respond.  Collier and Lee Counties have fully implemented the Alleged Non-Citizen Voter Purge Program and have, in fact, removed from the statewide voter registration system voters who failed to respond to the notices and did not return the voter eligibility forms.

44.     Further, the Alleged Non-Citizen Voter Purge Program is not uniform because the DHSMV database used is outdated, inaccurate and not reliable, as it does not even require the use of citizenship information to administer driver licenses.

45.     The Alleged Non-Citizen Voter Purge Program disproportionately impacts newly-naturalized citizens as well as Hispanic, Black, Asian-American, and other minority voters.

**F.     The Alleged Non-Citizen Purge Program Violates the NVRA's Bar On Systematic Purges Within 90 Days of Federal Elections**

46.     Section 8(c)(2)(A) of the NVRA requires that the State of Florida "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official list of eligible voters." 42 U.S.C. § 1973gg-6(c)(2)(A).

47.     The prohibition on systematic purges within 90 days of an election is central to the NVRA's goals of protecting against possible disenfranchisement of eligible voters while ensuring accurate and current voter registration rolls.  Regarding programs that systematically remove ineligible voters from the official list of eligible voters, the House Report on the NVRA states that:  "The Committee is concerned that *such programs can be abused and may result in the elimination of names of voters from the rolls solely due to their failure to respond to a mailing. Abuses may be found in the design of a program as well as in its implementation."* House Report No. 103-9, H.R. REP. 103-9, 15–16, 1993 U.S.C.C.A.N. 105, 119–20 (emphasis

added).   Moreover, it is more difficult for concerned parties to identify and seek to correct inaccuracies resulting from systematic purges within 90 days of an election precisely because of the systematic nature and short time frame.

48.   The next Federal election in Florida is the August 14, 2012 primary election. Therefore, the 90th day before the August 14 primary election is May 16, 2012.

49.   Defendant is in breach of Section 8(c)(2)(A) of the NVRA.   First, Plaintiffs are informed and believe that the majority of voters on the Purge List who were notified were instructed that their deadline to return the voter eligibility forms was after May 16, 2012. Moreover, Plaintiffs are informed and believe that under Section 48.075(7), Florida Statutes, no voter on the Purge List could possibly be removed until after May 16, 2012.

50.   Defendant has not disputed the timeline set forth above.   However, despite the NVRA's ban on systematic purges 90 days prior to an election, as set forth above, Defendant instructed the Supervisors of Elections to continue to carry out the Alleged Non-Citizen Voter Purge Program by reviewing the Purge List, conducting Additional Research, sending out notices and voter eligibility forms and removing voters under Fla. Stat. § 98.075(7).   Defendant has sought to excuse its actions by asserting that the Alleged Non-Citizen Voter Purge Program falls within an exception to Section 8(c)(2)(A) of the NVRA.   Defendant is wrong.

51.   The NVRA establishes clear, enumerated exceptions to the 90 day prohibition.   A state may only remove from the list registered persons who fall into four categories:   those who request to be removed, those ineligible because of criminal conviction, those ineligible because of mental incapacity, and those who have died.   42 U.S.C. § 1973gg-(6)(c)(2)(B).   The NVRA

accomplishes this by placing outside the prohibition's ambit the categories of removals enumerated in 42 U.S.C. § 1973gg-(6)(c)(3)(A) and (B) or (4)(A) and (B).

52.     Importantly, the removal of alleged non-citizen voters is not one of the enumerated exceptions to the NVRA's 90 day prohibition.  During the debates on the NVRA, Senator Mitch McConnell proposed an amendment that would have expanded the exceptions to the proscription against removal of voters from the rolls during the 90 day period.  *See* 139 Cong. Rec. 2960 (Mar. 16, 1993) (Amendment No. 100); 139 Cong. Rec. 2970 (Amendment No. 141), and 139 Cong. Rec. 3066 (Mar. 17, 1993) (Amendment No. 169).  *Cf.* 42 U.S.C. §1973gg-6(a)(3) (2010).

53.     Such legislative history supports the previously delineated *expressio unius* argument that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied." *Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616-17 (1980).

### G.     Fulfillment of a Condition Precedent

54.     By letter dated May 24, 2012, Plaintiffs' counsel provided Defendant with written *ante litem* notice that the Alleged Non-Citizen Voter Purge Program was in violation of the NVRA.  To date, the violation has not been corrected.

**COUNT I**
**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201**
**SECTION 2 OF THE VRA, 42 U.S.C. § 1973**

55.     Plaintiffs incorporate Paragraphs 1 through 30 and 54 above.

56.     42 U.S.C. § 1983 authorizes suits for the deprivation of a right secured by the Constitution or the laws of the United States caused by a person acting under the color of state law.

57.     42 U.S.C. § 1973a of the VRA likewise creates a private right of action for aggrieved persons whose voting rights have been denied or impaired.

58.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 (the "Declaratory Judgment Act").  Plaintiffs seek a declaration that the Alleged Non-Citizen Voter Purge Program violates Section 2, of the VRA, 42 U.S.C. § 1973, which prohibits Defendant from imposing any "voting qualification or prerequisite to voting or standard, practice, or procedure" which results in a denial or abridgement of the rights of United States citizens, namely Hispanics and Blacks, to vote. 42 U.S.C. § 1973.

59.     There is a bona fide, actual, present practical need for the requested declaration. The Alleged Non-Citizen Voter Purge Program has resulted in United States citizens, namely Hispanics and Blacks having "less opportunity than other members of the electorate to participate in the political process and to elect the representatives of their choice." 42 U.S.C. § 1973.

60.     Plaintiffs are entitled to have resolved by judicial determination, all doubts raised by Defendant's Alleged Non-Citizen Voter Purge Program and to have these declared and confirmed by judicial determination.

61.     The declaration requested deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

62.     Defendant has, or reasonably may have actual, present, adverse and antagonistic interests and has repeatedly advised of its intent to continue the Alleged Non-Citizen Purge Program.

63.     The adverse interests are all before the Court.

64.     The relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

**WHEREFORE**, Plaintiffs request that the Court enter a judgment declaring that:  (a) the Alleged Non-Citizen Voter Purge Program violates Section 2, of the VRA, 42 U.S.C. § 1973, because it has resulted in United States citizens, namely Hispanics and Blacks having "less opportunity than other members of the electorate to participate in the political process and to elect the representatives of their choice"; (b) for reasonable attorneys' fees including litigation expenses and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 1973*l*(e); and (c) for all other relief that the Court deems just and proper.

**COUNT II**
**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201**
**SECTION 8(c)(2)(A) of the NVRA,42 U.S.C. § 1973gg-6(b)(1)**
**AND Fla. Stat. § 98.075(1)**

65.     Plaintiffs incorporate Paragraphs 1 through 45 and 54 above.

66.     42 U.S.C. § 1983 authorizes suits for the deprivation of a right secured by the Constitution or the laws of the United States caused by a person acting under the color of state law.

67.     Section 11(b) of the NVRA, 42 U.S.C. § 1973gg-9(b), likewise creates a private right of action for parties who are aggrieved by a violation of the Act.

68.     This is an action for declaratory relief pursuant to the Declaratory Judgment Act. Plaintiffs seek a declaration that the Alleged Non-Citizen Voter Purge Program violates Section 8(b)(1) of the NVRA, 42 U.S.C. § 1973gg-6(b)(1) and Section 98.075(1), Florida Statutes, both of which provide that any State program or activity designed to ensure the maintenance of accurate and current voter registration rolls "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965[.]"

69.     There is a bona fide, actual, present practical need for the requested declaratory relief.  The Alleged Non-Citizen Voter Purge Program is not uniform, has been discriminatory against minority voters, namely Hispanics and Blacks, and has disproportionately impacted lawful, eligible minority voters, including Ms. Arcia.  In fact, as set forth above, if Defendant's instructions to the Supervisors of Elections as set forth in the Webinar, are carried out, the Ms. Arcia will be removed from the statewide voter registration system.  Moreover, the Program disenfranchises the minority communities that the institutional Plaintiffs serve and thus, frustrates the missions of the institutional Plaintiffs and forces them to divert their resources to combat the Program.

70.     Defendant and his employees and agents lack adequate rules and procedures governing the conduct of programs and activities to maintain an accurate and current voter registration roll that are uniform, nondiscriminatory, and in compliance with the VRA.

71.     Defendant and his employees and agents have failed to enforce substantive standards or provide adequate training to ensure that agents, employees and representatives of the DOS make a reasonable effort to conduct programs and activities to maintain an accurate and

current voter registration roll that are uniform, nondiscriminatory, and in compliance with the VRA.

72.     Plaintiffs are entitled to have resolved by judicial determination, all doubts raised by Defendant's Alleged Non-Citizen Voter Purge Program and to have these declared and confirmed by judicial determination.

73.     The declaration requested deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

74.     Defendant has, or reasonably may have actual, present, adverse and antagonistic interests and has repeatedly advised of its intent to continue the Alleged Non-Citizen Voter Purge Program.

75.     The adverse interests are all before the Court.

76.     The relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

77.     Unless and until ordered to cease doing so by this Court, Defendant and his employees or agents will continue to fail to conduct adequate programs and activities to maintain an accurate and current voter registration roll that are uniform and non-discriminatory in accordance with Section 8(b) of the NVRA, 42 U.S.C. 1973gg-6(b) and Section 98.075(1), Florida Statutes.

**WHEREFORE,** Plaintiffs request that the Court enter a judgment declaring that:  (a) the Alleged Non-Citizen Voter Purge Program violates Section 8(b)(1) of the NVRA, 42 U.S.C. 1973gg-6(b) and Section 98.075(1) of Florida Statutes, both of which provide that any State program or activity designed to ensure the maintenance of accurate and current voter registration

rolls "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965[.]"; (b) for reasonable attorneys' fees including litigation expenses and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 1973gg-9(c); and (c) for all other relief that the Court deems just and proper.

## COUNT III
### DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201
#### Section 8(c)(2)(A) of the NVRA, 42 U.S.C. § 1973gg-6(c)(2)(A)

78.     Plaintiffs incorporate Paragraphs 1 through 24 and 46 through 54 above.

79.     42 U.S.C. § 1983 authorizes suits for the deprivation of a right secured by the Constitution or the laws of the United States caused by a person acting under the color of state law.

80.     Section 11(b) of the NVRA, 42 U.S.C. § 1973gg-9(b) likewise creates a private right of action for parties who are aggrieved by a violation of the Act.

81.     This is an action for declaratory relief pursuant to the Declaratory Judgment Act. Plaintiffs seek a declaration that the Alleged Non-Citizen Voter Purge Program violates Section 8(c)(2)(A) of the NVRA, 42 U.S.C. § 1973gg-6(c)(2)(A) which bars systematic purges within 90 days of an election, except in limited and specific circumstances not found here.

82.     There is a bona fide, actual, present practical need for the requested declaration. The Alleged Non-Citizen Voter Purge Program deprives eligible voters, including Ms. Arcia, of their rights under the NVRA.  In fact, as set forth above, if Defendant's instructions to the Supervisors of Elections as set forth in the Webinar, are carried out, the individual Ms. Arcia will be removed from the statewide voter registration system.  The Program also disenfranchises the

communities that the institutional Plaintiffs serve and thus, frustrates the missions of the institutional Plaintiffs.

83.    Plaintiffs are entitled to have resolved by judicial determination, all doubts raised by Defendant's Alleged Non-Citizen Voter Purge Program and to have these declared and confirmed by judicial determination.

84.    The declaration requested deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

85.    Defendant has, or reasonably may have actual, present, adverse and antagonistic interests and has repeatedly advised of its intent to continue the Alleged Non-Citizen Voter Purge Program.

86.    The adverse interests are all before the Court.

87.    The relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

**WHEREFORE,** Plaintiffs request that the Court enter a judgment declaring that:  (a) the Alleged Non-Citizen Voter Purge Program violates Section 8(c)(2)(A) of the NVRA, 42 U.S.C. § 1973gg-6(c)(2)(A) which bars systematic purges within 90 days of an election, except in limited and specific circumstances not found here; (b) for reasonable attorneys' fees including litigation expenses and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 1973gg-9(c); and (c) for all other relief that the Court deems just and proper.

## COUNT IV
## INJUNCTIVE RELIEF

88.    Plaintiffs incorporate Paragraphs 1 through 87 above.

89.     42 U.S.C. § 1983 provides for equitable relief for the deprivation of a right secured by the Constitution or the laws of the United States caused by a person acting under the color of state law.  Additionally, Section 11(b)(2) of the NVRA, 42 U.S.C. § 1973gg-9(b)(2) provides for injunctive relief to redress a violation of the NVRA.

90.     Plaintiffs have a great likelihood of suffering irreparable and substantial harm as a result of the Alleged Non-Citizen Voter Purge Program.  Unless this Court enjoins the actions of Defendant and Defendant's use of the Alleged Non-Citizen Voter Purge Program, Ms. Arcia and other lawful, eligible voters will be removed from the voter registration roll and disenfranchised in future elections and members of the institutional Plaintiffs will be denied their fundamental right to vote.

91.     The public interest weighs strongly in favor of letting every lawful, eligible voter exercise the right to vote.

**WHEREFORE,** Plaintiffs request that the Court enter a preliminary and a permanent injunction ordering Defendant:   (a) to discontinue the Alleged Non-Citizen Voter Purge Program; (b) to instruct all Supervisors of Elections to restore the statewide voter registration system and all voters who have been removed as a result of the failure to respond to the notice or to return the voter eligibility form; (c) to instruct all Supervisors of Elections to send new notices to all persons on the Purge List explaining their rights as voters and assuring them that no lawful, eligible voter will be disenfranchised based on failure to provide documentary proof of United States citizenship; (d) to conduct adequate programs and activities to maintain an accurate and current voter registration roll that are uniform and non-discriminatory in accordance with Section 8(b)(1) of the NVRA, 42 U.S.C. 1973gg-6(b) and Section 98.075(1) of Florida Statutes,; (e) to

cease enforcing standards, practices, procedures and/or programs that deny Black and Hispanic United States citizens an opportunity to participate effectively in the political process on an equal basis with other members of the electorate; (f) for reasonable attorneys' fees including litigation expenses and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 1973gg-9(c); and (g) for all other relief that the Court deems just and proper.

Dated: June 19th, 2012.

Respectfully submitted,

DUANE MORRIS LLP

By:    /s/ Lida Rodriguez-Taseff_____
Lida Rodriguez-Taseff, Esq.
Florida Bar No. 039111
200 S. Biscayne Blvd.
Suite 3400
Miami, FL 33131
(305) 960-2242
(305) 960-2201 (Fax)
LRTaseff@duanemorris.com

*Attorney for Plaintiffs Karla Vanessa Arcia, Melande Antoine, VEYEYO, Florida Immigrant Coalition, Inc., National Congress for Puerto Rican Rights, and Florida New Majority, Inc.*

By:    /s/ Katherine Roberson-Young_____
Katherine Roberson-Young, Esq.
Florida Bar No. 038169
3000 Biscayne Blvd., Suite 212
Miami, Florida 33137
(305) 571-4082
(305) 571-1396 (Fax)
katherine.roberson-young@seiu.org

*Attorneys for Plaintiff 1199SEIU United Healthcare Workers East*

CO-COUNSEL:
Penda Hair, Esq.
Katherine Culliton-González, Esq.
Uzoma Nkownta, Esq.
Advancement Project
1220 L Street, N.W., Suite 850
Washington, D.C.  20005
(202) 728-9557
(202) 728-9558 (fax)
pendahair@advancementproject.org
kcullitongonzalez@advancementproject.org
UzomaNkownta@advancementproject.org

Ben Hovland, Esq.
Fair Elections Legal Network
1825 K Street NW, Suite 450
Washington, D.C. 20006
(202) 248-5346
(202)331-1663 (fax)
bhovland@fairelectionsnetwork.com

Juan Cartagena, Esq.
Jose Perez, Esq.
Diana S. Sen, Esq.
LatinoJustice PRLDEF
99 Hudson Street, 14th Floor
New York, NY 10013-2815
(212)219-3360  (212)431-4276 (fax)
jcartagena@latinojustice.org
jperez@latinojustice.org
dsen@latinojustice.org

Catherine M. Flanagan, Esq.
Project Vote
1350 I St., N.W., Suite 1250
Washington, DC 20005
(202) 210-6903
(202)629-3754 (fax)
cflanagan@projectvote.org

***Attorneys for Plaintiffs***