UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-22282-CIV-ZLOCH

KARLA VANESSA ARCIA, et al.

Plaintiffs,

**O R D E R**

vs.

KEN DETZNER, in his official
capacity as Florida Secretary
of State,

Defendant.
_____/

THIS MATTER is before the Court upon Plaintiffs' Motion For
Preliminary Injunction And Summary Judgment (DE 65) and Defendant's
Memorandum In Opposition To Plaintiffs' Motion For Preliminary
Injunction And Summary Judgment (DE 79), which the Court construes
as a Motion to Dismiss for Lack of Standing. The Court has
carefully reviewed said Motions, the entire court file and is
otherwise fully advised in the premises.

## I. Background

The above-styled cause concerns the implementation of the
program known as "Processing Registered Voters - Non-Immigrants"
(hereinafter "the Program") by Defendant Florida Secretary of State
Ken Detzner (hereinafter "the Secretary"). Plaintiffs are comprised
of two individual Plaintiffs and five organizational Plaintiffs who
claim that their rights, and those of their members, "are affected
by the program instituted by the Florida Department of State . . .
to carry out a systematic purge of alleged non-citizens from the

Florida voter rolls." DE 57, p. 2. The individual Plaintiffs, Karla Vanessa Arcia (hereinafter "Arcia") and Melande Antoine (hereinafter "Antoine"), are United States citizens who are registered to vote in the State of Florida and were included on the Secretary's initial list of potential non-citizens. DE 71, p. 4. The five organizational Plaintiffs include a labor union and various Florida-based civic organizations. These organizational Plaintiffs allege that their members are at risk of being removed from the voting rolls or that based on the Program, the organizations themselves have had to divert their resources away from their regular business activities and toward addressing the implementation of the Program. DE 57, pp. 5-8.

On June 19, 2012, Plaintiffs initiated this case with the filing of their Complaint For Declaratory And Injunctive Relief (DE 1), alleging that the Program violated certain provisions of the Voting Rights Act (hereinafter "the VRA") and the National Voter Registration Act (hereinafter "the NVRA"). By this initial Complaint (DE 1), Plaintiffs alleged that in April of 2012, the Secretary began the process of identifying, with the intent of later purging, potential non-citizens from the rolls of registered voters in the State of Florida. To identify such potential non-citizens, the Secretary gained information from the Florida Department of Highway Safety and Motor Vehicles (hereinafter "DHSMV") indicating that a registered voter may not be a United States citizen, which

was then cross-checked against various other databases.  At that time, the Secretary issued a press release which stated that the Department of State was "actively seeking access to federal Department of Homeland Security databases such as SAVE (Systematic Alien Verification for Entitlements) for further verification of immigration status."  DE 1, pp. 7-8 (hereinafter "the SAVE database").  The Secretary initially identified 180,000 names of alleged "potential non-citizens," and sent a sample of that list, containing 2,625 names, to the Supervisors of Elections in Florida's 67 counties.  DE 57, p. 1.  The Secretary then directed these Supervisors to confirm whether any identified registered voter on the list was indeed a potential non-citizen, and if so, to begin the statutorily required notice and removal process to remove the individual from the voting rolls.

According to Plaintiffs, the Program—especially in its initial implementation—proved to be inaccurate, and the list of 2,625 "potential non-citizens" included at least some United States citizens, including the two individually named Plaintiffs: Arcia and Antoine.  On April 30, 2012, implementation of the Program was temporarily suspended.  Since that time, the Secretary has received access to the federal SAVE database from the Department of Homeland Security (hereinafter "DHS"), which the Secretary alleges "is a rapidly updated federal database that allows state and local governments to check the most recent immigration status of non-

3

citizens who lawfully entered the United States." DE 79, p. 6. By checking an individual's Alien Registration Number (hereinafter "A-number"), "a unique 9-digit identifier given only to non-citizens," against information in the SAVE database, Defendant maintains that it can accurately ascertain whether a registered voter has been naturalized as a United States citizen. Id., p. 7. The Secretary asserts that since its August 14, 2012, declaration to use the SAVE database in the implementation of the Program, "the Secretary's data matching program has identified at least scores of registered voters who have either personally attested to their lack of citizenship or who, after the data matching process, . . . appear to be ineligible registered voters based on non-citizenship." Id.

On September 12, 2012, the Parties filed a Stipulation Of Dismissal As To Counts I, II, And Part Of Count IV Of Complaint For Declaratory And Injunctive Relief (DE 56), dismissing the claims under the VRA, and the claim under paragraph (6)(b)(a) of section 8 of the NVRA, that the Program is not uniform, nondiscriminatory, and in compliance with the VRA. Thus, the sole claim that remains by Plaintiffs' First Amended Complaint (DE 57) is that the Program violates the NVRA's prohibition on completing "not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official list of eligible voters." 42 U.S.C. § 1973gg-6(c)(2)(A) (2002).

4

The Court held an evidentiary Hearing on the instant Motion (DE 65) on October 1, 2012.  At the Hearing, the Court heard from two witnesses on behalf of Plaintiffs: Mr. Dale Ewart, the Assistant Regional Director of the Florida Region for 1199SEIU United Healthcare Workers East, and Mr. Wilfredo Seda, the Chair of the National Congress for Puerto Rican Rights.  The Court then heard argument from Plaintiffs and the Secretary.

By this Motion (DE 65), Plaintiffs ask that the Court do essentially four things: (1) declare that the State's implementation of the Program, specifically in its recent use of the SAVE database, violates the NVRA; (2) enjoin the Secretary from conducting any systematic purge aimed at excluding ineligible voters prior to the November 6, 2012, election; (3) direct the Secretary to ensure that any individual who was removed after August 8, 2012, be restored to the voting rolls prior to October 15, 2012; (4) and instruct the Secretary to file with the Court a list of voters who have been so removed from the voting rolls and/or have been reinstated.  DE 65, pp. 1-2.

## II. Standing

By Defendant's Memorandum In Opposition To Plaintiffs' Motion For Preliminary Injunction And Summary Judgment (DE 79), which the Court construes as a Motion to Dismiss for Lack of Standing, the Secretary argues that both the individual Plaintiffs and the organizational Plaintiffs lack standing to proceed in the above-

styled cause.  Based on the testimony and evidence presented at the evidentiary Hearing held on October 1, 2012, and the facts set forth in Plaintiffs' Statement Of Undisputed Material Facts In Support Of Their Motion For Summary Judgment (DE 65-2), the Court finds that only some of the Plaintiffs have established standing.  The instant Motion to Dismiss for Lack of Standing will therefore be granted in part and denied in part as detailed below.

At the October 1, 2012 Hearing, the Court heard testimony from Mr. Dale Ewart, the Assistant Regional Director of the Florida Region for 1199SEIU United Healthcare Workers East (hereinafter "1199SEIU") and Mr. Wilfredo Seda, the Chair of the National Congress for Puerto Rican Rights, regarding the standing of 1199SEIU, the National Congress for Puerto Rican Rights, as well as that of individual Plaintiffs Arcia and Antoine.  No testimony or evidence was presented at the Hearing regarding the standing of organizational Plaintiffs Veye Yo, the Florida Immigration Coalition, Inc., or Florida New Majority, Inc.

Plaintiffs also set forth facts supporting their standing to proceed in the above-styled cause in their Statement Of Undisputed Material Facts In Support Of Their Motion For Summary Judgment (DE 65-2). In the context of a Motion For Summary Judgment, failure to controvert a fact alleged by the movant and supported by the record results in the same being deemed admitted.  S.D. Fla. L.R. 7.5(d). Plaintiffs allege facts regarding all individual and organizational

6

Plaintiffs in paragraphs 11 through and including 16 of their Statement Of Undisputed Material Facts (DE 65-2). In response to each the facts alleged in paragraphs 11 through and including 16, Defendant responds in an identical fashion: that he is "without knowledge or information sufficient to form a belief as to the truth or falsity of the statements . . . and therefore denies them." DE 79-4. These bare and conclusory denials can hardly be understood to substantively challenge the facts alleged by Plaintiffs, supported by the record, and certainly do nothing to controvert[1] the same. The Court notes that this case was filed June 19, 2012. See DE 1. Defendant has had more than adequate time to engage in discovery regarding standing, and for whatever reason has chosen not to do so. The Court therefore finds it insincere for the Secretary to now complain that he has not been allowed sufficient time to address the standing issue.

Therefore, based in large part on the Eleventh Circuit's decision in NAACP v. Browning, 522 F.3d 1153 (11th Cir. 2008), the Court finds that the testimony presented at the October 1, 2012 evidentiary Hearing, in conjunction with the Declarations of Maria

---

[1] Mere denial of an opposing party's statement does not specifically controvert anything. Pursuant to the Local Rules of this District, an opposing party's statement needs to be supported "by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." S.D. Fla. L.R. 7.5(c). Thus, to the extent Plaintiffs' facts are supported by record evidence and not specifically controverted by Defendant, they are deemed admitted.

Del Rosario Rodriguez of Florida Immigration Coalition, Inc. (DE 65-5), Mr. Ewart of 1199SEIU (DE 65-6), and Mr. Seda of the National Congress for Puerto Rican Rights (DE 65-7), are sufficient——albeit minimally so——to establish the standing in the above-styled cause of individual Plaintiffs Arcia and Antoine, as well as organizational Plaintiffs the National Congress For Puerto Rican Rights, 1199SEIU United Healthcare Workers East, and Florida Immigrant Coalition, Inc. Accordingly, in so far as it challenges the standing of these Plaintiffs, Defendant's Motion to Dismiss for Lack of Standing (DE 79) will be denied.

However, the Court recognizes that, even where not successfully controverted, only those facts supported by specific record evidence shall deemed admitted. See S.D. Fla. L.R. 7.5(c) and 7.5(d). As to organizational Plaintiffs Veye Yo and Florida New Majority, Inc., the Court reiterates that no testimony or evidence regarding the standing of these two Plaintiffs was presented to the Court at the evidentiary Hearing on October 1, 2012. While Plaintiffs do make statements of fact regarding these two organizational Plaintiffs in their Statement Of Undisputed Material Facts (DE 65-2), in support of those statements Plaintiffs cite only to the allegations made in various paragraphs of their First Amended Complaint. See DE 65-2, ¶¶ 12, 15. While Defendant's failure to controvert the statements remains, the Court cannot and will not deem facts admitted where there is not sufficient evidence in the record to support them.

8

Beyond the bald allegations made in the First Amended Complaint (DE 57), the Court finds no record evidence supporting the standing of organizational Plaintiffs Veye Yo and Florida New Majority, Inc. to proceed in the above-styled cause.  Accordingly, in so far as it challenges the standing of Plaintiffs Veye Yo and Florida New Majority, Inc., Defendant's Motion to Dismiss for Lack of Standing (DE 79) will be granted.

### III. Preliminary Injunction

The Court next considers Plaintiffs' request for the issuance of a preliminary injunction.  A district court may grant a preliminary injunction if the movant demonstrates

> (1) a substantial likelihood of success on the merits;
> (2) that irreparable injury will be suffered unless the injunction is  issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest.

Keeton v. Anderson-Wiley, 664 F.3d 865, 868 (11th Cir. 2011) (citing BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC, 425 F.3d 964, 968 (11th Cir. 2005)).  "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." ACLU of Florida v. Miami-Dade Cnty. Sch. Bd., 557 F.3d 1177, 1198 (11th Cir. 2009) (internal citation and quotation marks omitted).  Further, a "[f]ailure to show any of the four factors is fatal, and the most common failure is not showing

a substantial likelihood of success on the merits." Id.  The Court will thus first consider whether Plaintiffs are likely to succeed on the merits of the sole remaining claim in their First Amended Complaint——that the Program "violates Section 8(c)(2)(A) of the NVRA, [codified at] 42 U.S.C. § 1973gg-6(c)(2)(A)."  DE 57, p. 17.

Subparagraph (c)(2)(A) of section 8 of the NVRA (hereinafter "the 90-day Provision") reads as follows: "A state shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official list of eligible voters." § 1973gg-6(c)(2)(A).  Plaintiffs argue that the Program "violates the plain language" of the 90-day Provision and that no part of section 8 excepts the removal of non-citizens by a "systematic program" such as that which the Secretary is implementing here.  See DE 65-1, p. 9 & p. 14 n.9.  The Secretary posits several competing interpretations of section 8 of the NVRA. The Secretary first argues that section 8 of the NVRA simply does not concern the removal of individuals who were never properly registered in the first instance, or if it does, subsection (b) addresses, generally, the removal of those individuals.  DE 79, p. 17.  He then argues, in the alternative, that subparagraph (a)(3)(B) excepts from the 90-day provision the removal of registrants "as provided by State law," which would necessarily include the State's statutory proscription against a non-citizen registering to vote.

10

DE 79, p. 20.  The Court considers each of these arguments in turn.

A. The General Removal Provision: Subsection (a)(3)

In order to understand the meaning of the 90-day provision, the Court must first look to paragraph (a)(3) (hereinafter "the General Removal Provision").  Paragraph (a)(3) deals with the types of "registrants" that may be removed from "the official list of eligible voters." § 1973gg-6(a)(3).  This provision provides:

> (a)  In general.   In the administration of voter registration for elections for Federal office, each State shall—
> ...
> (3)  provide that the name of a registrant may not be removed from the official list of eligible voters except—
>       (A) at the request of the registrant;
>       (B) as provided by State law, by reason of criminal conviction or mental incapacity; or
>       (C) as provided under paragraph (4).

Id.  Paragraph (4) then addresses the removal of names of "ineligible voters" by reason of: "(A) the death of the registrant; or (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d) of this section." § 1973gg-6(a)(4)(A)-(B).

This General Removal Provision found in (a)(3) is later referenced in paragraph (c)(2), which also contains the 90-day Provision.  Paragraph (c)(2) explicitly exempts from the 90-day period certain "removals" that are enumerated in subparagraphs (a)(3)(A)-(C).  Subparagraph (c)(2)(B) provides:

> (B) Subparagraph (A) shall not be construed to preclude -
>       (i) the removal of names from official lists of voters on a basis described in paragraph (3)(A) or

(B) or 4(A) of subsection (a) of this section; or
(ii) correction of registration records pursuant to
this subchapter.

Thus, the Secretary's Program is not subject to the 90-day provision
if it "remov[es] [] names from official lists of voters on a basis
described in paragraph (3)(A) or (B) or 4(A) of subsection (a) of
this section" or corrects "registration records pursuant to this
subchapter." § 1973gg-6(c)(2)(B)(i)-(ii).

Taking these two provisions together, then, four
classifications of "removals" are explicitly excepted from the 90-
day provision, meaning that a removal on these grounds may be
effected at any time. These grounds include: (1) removals at the
request of the registrant; (2) those "provided by State law, by
reason of criminal conviction or mental incapacity"; (3) removals
based on the death of the registrant; and (4) "correction of
registration records pursuant to this subchapter." § 1973gg-
6(a)(3)(A)-(B), (4)(A); (c)(2)(B)(ii). The Secretary states in a
footnote that clause (ii), "correction of registration records," may
pertain to the Program and allow it to be implemented at any time;
yet, because the Parties have not thoroughly explored an
interpretation of this clause, and because it was not raised at the
Hearing, the Court will not address it now. See DE 79, p. 20 n.6.

At first blush, it would appear that implementation of the
Program would be excepted from the 90-day provision, because it is
"provided by State law." By Florida Statute, individuals who are

12

"not [] United States citizen[s]" yet are registered to vote may be removed from "the statewide voter registration system."  Fla. Stat. § 98.075(6) (2011).  This statute then provides for the "procedures for removal" that must be followed in order to remove such an individual.  § 98.075(7).

Yet, subparagraph (a)(3)(B) cannot reasonably be read to create three independent categories for removals——those based on State law, criminal conviction, and mental incapacity.  Indeed, the wording of this subparagraph is puzzling, and if Congress wanted to clearly indicate that this subparagraph dealt exclusively with criminal convictions or mental incapacity based on State law, it could have stated as much.  However, if this subparagraph were intended to set forth three distinct categories for removal, then indeed any removals "based on State law" would render the 90-day provision at best superfluous, and at worst, directly inconsistent with subparagraph (a)(3)(B).  In other words, removals under state law based on a change in residence cannot be allowed during the 90-day period under a reading of subparagraph (a)(3)(B), yet also prohibited in the 90-day period based on subparagraph (c)(2)(A).  Thus, the Court does not find that the Program's implementation is permitted based on this understanding of subparagraph (a)(3)(B).

B. The Program Is Not Subject to the General Removal Provision or the 90-day Provision

As set forth above, paragraph (a)(3) provides the exclusive grounds upon which a "registrant" may be removed from the "official

13

list of eligible voters." § 1973gg-6(a)(3) ("[T]he name of a registrant may not be removed from the official list of eligible voters except" under three enumerated grounds.")  Therefore, if one were to read this provision literally and without reference to any other portion of section 8 of the NVRA, the <u>only</u> grounds by which a State could remove a "registrant," would be: (1) if the registrant requests to be removed; (2) the registrant becomes ineligible to vote under State law by reason of criminal conviction or mental incapacity; (3) the registrant dies; or (4) the registrant changes his residence.

It would necessarily follow, then, that a state would be prohibited from removing from its voting rolls a registrant who was improperly registered for other valid reasons.  So a state could therefore not remove from its voting rolls minors, fictitious individuals, individuals who in fact reside in a different state, and non-citizens.  Not only would this interpretation stand in direct contravention of Florida law, <u>see</u> Fla. Stat. § 98.075(6), but it would produce an absurd result.  <u>See</u> <u>United States v. Ballinger</u>, 395 F.3d 1218, 1237 (11th Cir. 2005) ("[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or absurd conclusion.")  Therefore, paragraph (a)(3) cannot apply to the removal of non-citizens.  <u>See also</u> <u>United States v. Florida</u>, 2012 WL 2457506, at *3 (N.D. Fla. June 28, 2012)

14

("This conclusion is inescapable: section 8(a)(3)'s prohibition on removing a registrant except on specific grounds simply does not apply to an improperly registered non-citizen.").

As stated above, subparagraph (c)(2)(A) lists the removals that are excepted from the 90-day provision: (1) removals at the request of the registrant; (2) those "provided by State law, by reason of criminal conviction or mental incapacity"; (3) removals based on the death of the registrant; and (4) "correction of registration records pursuant to this subchapter." § 1973gg-6(a)(3)(A)-(B), (4)(A); (c)(2)(B)(ii).  Therefore, the only removal under paragraph (a)(3) that is subject to the 90-day Provision is a removal based on "a change in the residence of the registrant, in accordance with subsections (b), (c), and (d) of this section." § 1973gg-6(a)(4)(B).

The Court finds no reason to conclude that the 90-day Provision applies to anything other than removals of registrants based on a change in residence.  The 90-day Provision is found in subsection (c), which is entitled "Voter removal programs."  Paragraph (1) of subsection (c) then details how a state is to implement the requirements of subsection (a)(4) ["a change in residence of the registrant"], such as by "establishing a program" to address the change-of-address of a registrant who moves inside, or outside, the state.  Paragraph (2) of course <u>includes</u> the 90-day Provision, which, when read in conjunction with paragraph (a)(3) reveals that registrants who become ineligible because of a change in residence

15

may not be removed in the 90-day period.  Finally, not only does subparagraph (2)(A) incorporate by reference paragraph (a)(3) in setting forth those removals excepted from the 90-day period, but the language of the two provisions track one another.  Thus, these two provisions are indeed "inextricably linked."  DE 105, p. 70. See also United States v. Florida, 2012 WL 2457506, at *3 ("'[R]emoved" in 8(a)(3) and 'remove' in 8(c)(2) mean the same thing.  And there is no reason to believe the reference to removing a 'registrant' in 8(a)(3) means something different than removing 'ineligible voters' in 8(c)(2) . . .).

Another way to understand these two sets of provisions is that they only address the removal of once-eligible voters——those who were at one time bona fide registrants, yet because of personal request, criminal conviction, mental incapacity, or change in residence, became ineligible.  It is indeed notable these provisions are silent as to the removal of those registered voters who were never bona fide registrants, and whose registration was void ab initio by virtue of their status as minors, non-citizens, or any other factor that would nullify their registration.

Put simply, these two provisions are meant to be read in conjunction with one another and when read together, the 90-day provision is meant only to proscribe the removal within 90 days of a federal election of registrants who become ineligible to vote based on a change in residence.  Plaintiffs seem to argue that the

16

90-day Provision's use of the word "systematically" distinguishes some voter removal programs from others.  See DE 65-1, p. 14 n.9 ("the Plaintiffs believe non-citizens may be removed from the voting rolls within 90 days of a federal election - as long as the removal is not party of a systematic program.")  To be sure, subsection (c) sets forth mere "voter removal programs," as opposed to systematic ones.  Yet, this does not change the fact that Plaintiffs cannot direct the Court to any provision of section 8 that differentiates a systematic program from a non-systematic one; nor can Plaintiffs direct the Court to a provision of section 8 that provides guidance on how to properly remove an individual from the voting rolls who was never eligible to vote.

At the Hearing, Plaintiffs explored several measures that they aver should deter non-citizens from registering to vote, or at least from voting, despite their lack of citizenship.  Because it is a federal offense for a non-citizen to both register to vote and cast a vote in a federal election, such individuals should be deterred from breaking the law.  And if those individuals do succeed in casting a vote despite their non-citizenship, they can be criminally prosecuted.  See 42 U.S.C. § 1973gg-3(C)(2)(B)(ii); § 1973gg-3(C)(2)(C); 18 U.S.C. § 1015(f).  These suggestions give the Court little assurance.  Certainly, the NVRA does not require the State to idle on the sidelines until a non-citizen violates the law before the State can act.  And surely the NVRA does not require the State

to wait until <u>after</u> that critical juncture——when the vote has been cast and the harm has been fully realized——to address what it views as nothing short of "voter fraud."  DE 79, p. 2.

C. Subsection (b): Confirmation of Voter Registration

This only leaves one statutory proscription under section 8 that relates to the removal of non-citizens from the voting rolls. Subsection (b), "[c]onfirmation of voter registration," provides that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office——(1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 . . ."  § 1973gg-6(b)(1).  The only consistent reading of section 8 of the NVRA is that subsection (b) alone applies to programs such as the Secretary's.  Further, it is hard to understand why Congress would create a distinct subsection, markedly set apart from subsection (c)'s "[v]oter removal programs," which provides direction regarding the "confirmation" of voter registration.  By creating two distinct subsections, Congress meant to differentiate the removal of once-eligible voters from those who were never eligible in the first instance.  Finally, subsection (b) is consistent with Congress' finding that "the right of <u>citizens</u> of the United States to vote is a fundamental right" and one of the purposes of the NVRA is "to ensure that <u>accurate</u> and current voter registration rolls are

18

maintained." § 1973gg(a)(1), (b)(4) (emphasis added).

It must follow that subsection (b) was meant to apply to programs aimed at removing those voters whose status as registered voters was void <u>ab</u> <u>initio</u>. <u>See also</u> <u>United States v. Florida</u>, 2012 WL 2457506, at *4 (holding that pursuant to subsection (b), and in regard to "non-citizens, the state's duty is to maintain an accurate voting list. . . . But the NVRA does not require a state to allow a non-citizen to vote just because the state did not catch the error more than 90 days in advance.")

   <u>D. The Other Preliminary Injunction Factors</u>

The Court thus finds that Plaintiffs have failed to demonstrate "a substantial likelihood of success on the merits" on both Counts I and II of the First Amended Complaint (DE 57). This failure to satisfy one of the four-factors requisite to obtaining a preliminary injunction is fatal to Plaintiffs' Motion (DE 65), and therefore, the Court need not consider the other three factors. However, because they are similarly of no help to Plaintiffs, the Court will briefly address them.

The Court seriously questions whether Plaintiffs can establish that "irreparable injury . . . will be suffered unless the injunction is issued," based on their own 3-month delay in filing the instant Motion (DE 65). <u>Keeton</u>, 664 F.3d at 868. Such "a pattern of delay is fundamentally inconsistent with . . . allegations of irreparable injury." <u>Burger v. Hartley</u>, 2011 WL

6826645, at *2 (S.D. Fla. Dec. 28, 2011).  This is because "the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary injunction and suggests that there is, in fact, no irreparable injury." <u>Tough Traveler, Ltd. v. Outbound Prods.</u>, 60 F.3d 964, 968 (2d Cir. 1995).  Here, Plaintiffs filed the instant Motion (DE 65) three months after the June 19, 2012, filing of their initial Complaint (DE 1), and 36 days after Plaintiffs allege the Secretary stated he would "purge the state voter registry using its access to the SAVE database."  DE 57, p. 12.  Thus, if the Court were to reach a substantive consideration of this factor, the Court would find that Plaintiffs' delay in filing the instant Motion (DE 65) establishes that their purported injury is, in fact, not so serious as to warrant preliminary injunctive relief.

The Court next considers the third and fourth factors—that "the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party" and that "if issued, the injunction would not be adverse to the public interest." <u>Keeton</u>, 664 F.3d at 868.  By both state and federal law, the Secretary is charged with "protect[ing] the integrity of the electoral process" and promoting "the right of citizens of the United States to vote . . ." <u>See</u> § 1973gg(a), 1973gg-6(b); Fla. Stat. § 98.075(1)-(8).  Even the Department of Justice has recently recognized that "federal and state governments have a compelling

interest in excluding foreign citizens from activities intimately related to the process of democratic self-government." Brief of the United States <u>Bluman v. Fed. Election Comm.</u>, 130 S. Ct. 1087 (2012) (No. 11-275), 2011 WL 5548718, at *11 (internal citations and quotation marks omitted). The Court finds that the Secretary has a compelling interest in ensuring that the voting rights of citizens are not diluted by the casting of votes by non-citizens. Alternatively, and at the very least, Plaintiffs have failed to convince the Court that the purported harms——that voters' exercise of their rights will be chilled based on the Program, or that the organizational Plaintiffs will be forced to divert their resources toward addressing the effects of the Program——outweigh the Secretary's interest in protecting the integrity of the electoral process.

Therefore, the Court finds that Plaintiffs have failed to establish a substantial likelihood of success on the merits of the two-Count First Amended Complaint (DE 57). Further, even if Plaintiffs were able to establish this factor, the Court finds that Plaintiffs cannot establish any of the other three factors requisite to the Court's issuance of a preliminary injunction. Thus, to the extent the instant Motion (DE 65) seeks the issuance of a preliminary injunction, the Motion is denied.

## IV. Summary Judgment

The Court next turns to Plaintiffs' request that the Court

21

grant summary judgment in favor of Plaintiffs on all Counts in the First Amended Complaint (DE 57).

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quotation omitted).  Indeed,

> [t]he moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof.  Celotex Corp., 477 U.S. at 322; Everett v. Napper,

833 F.2d 1507, 1510 (11th Cir. 1987).  Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 255 (1986).

The Parties stipulated, prior to the October 1, 2012, Hearing, that "this action involves a pure question of law under Section 8(c)(2)(A) of the NVRA, 42 U.S.C. § 1973gg-6(c)(2)(A)."  <u>See</u> DE 71, p. 5.  Therefore, there are no disputed issues of material fact for the Court to consider at this time.  Applying the same reasoning justifying the Court's denial of Plaintiffs' request for a preliminary injunction, the Court finds that Plaintiffs have failed to establish that the Program violates the 90-day Provision of section 8 of the NVRA.  Consequently, to the extent the Motion (DE 65) seeks entry of summary judgment in Plaintiffs' favor, it will be denied.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion For Preliminary Injunction And Summary Judgment (DE 65) be and the same is hereby **DENIED;**

2. Defendant's Memorandum In Opposition To Plaintiffs' Motion For Preliminary Injunction And Summary Judgment (DE 79), which the Court construes as a Motion to Dismiss for Lack of Standing be and the same is hereby **GRANTED** in part and **DENIED** in part, consistent with the terms of this Order.  To the extent the Motion (DE 79)

seeks dismissal of the First Amended Complaint (DE 57) as it relates to Plaintiffs Veye Yo and Florida New Majority, Inc., the Motion be and the same is hereby **GRANTED.**  To the extent the Motion seeks dismissal as it relates to any other Plaintiff, the Motion (DE 79) be and the same is hereby **DENIED;** and

3. The First Amended Complaint (DE 57) be and the same is hereby **DISMISSED** as it relates to Plaintiffs Veye Yo and Florida New Majority, Inc.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___4th___ day of October, 2012.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies Furnished:

All Counsel of Record